Scott, J.
It is.the well-settled law of this state (whatever the decisions may have been elsewhere), that the mere indorsement, upon a note, of the name of a stranger, in blank, is prima facie evidence of a guaranty. But, if it be shown, that such indorsement was made at the time of the execution of the note, and the party making it has not prescribed the limits of his responsibility, he authorizes the holder to regard him as a maker, and he is to be treated simply as a surety. These ordinary presumptions may, however, be rebutted by parol proof of a different intention and agreement of the parties. A controlling effect will be given to-the intention of the parties when clearly shown. Bright v. Carpenter & Schuer, 9 Ohio Rep. 139; Champion & Lathrop v. Griffith, 13 Ohio Rep. 228; Robinson v. Abell, 17 Ohio Rep. 42; Greenough v. Smead, 3 Ohio St. Rep. 415.
The present case comes before us in an aspect quite different from that which was presented for our consideration heretofore, when the case stood on demurrer to the answer of Mickey, 10 Ohio St. Rep. 283. The answer of Mickey was then regarded as alleging, in substance, that he had, at the time of indorsing the note, expressly limited his responsibility to that of a second indorser. And this fact, being admitted by the demurrer, it was held that no liability could attach to Mickey, under this limitation, without the prior written indorsement of the payees. But, the subsequent pleadings of the parties, present an issue as to the fact of this limitation of the indorser’s liability, and the finding upon *520 this issue of fact, must, evidently, go far to settle the conflicting claims of the parties. On this issue, the district court found in favor of Mickey; that he had assumed only the liability of an indorser; and, of course, that of a second indorser; for it was further found, that, in the absence of a written indorsement, by the payees, which might give Mickey the position of a second indorser, he could not be held liable.
Was this finding clearly against the evidence in the case? If it was, that court erred in overruling the motion for a new trial; if it was’not, we ought not to disturb it.
It may be sufficient for all the purposes of the case, to refer only to the testimony of Mickey himself, and that of the witness Leyman, whom he introduced. There is no controversy, but, that the note in question, was given in part payment of a stock of goods, sold on a credit, by Mitchell, Harshbarger & Co. to H. Leyman, in the fall of 1854. The vendors declined to part with the goods, and trust to the sole responsibility of Leyman for payment. They required security upon the notes which were to be given for the purchase money; and Mickey was applied to, by Leyman, to become his surety. Mickey’s own testimony in regard to the transaction, is as follows: “ I remember of Leyman coining to me, and asking me to become Ms surety to.Mitchell, Harshbarger & Co. for the goods. I told him I would indorse for him. Afterward, Mitchell, or Harshbarger (I think Harshbarger), brought the notes up to my store. They were written, ‘we, or either of us.’ I refused to sign them; said I had not agreed to sign the notes, as principal; that I was no party to the sale; that I had agreed to indorse for Leyman. Hold them (Mitchell, Harshbarger & Co.) to draw the notes payable to them, and I would come down in the evening and sign. I said I would be liable as an indorser, and as indorser only. In the evening I went down — the notes were drawn — they were signed by Mickey, and I put my name on the back. There was nothing said, at that time, about the character of my liability. I suppose it *521 was all understood in .the previous conversation, and nothing more was said about it.”
Leyman’s testimony, in' the main,, corroborates that of Mickey. After stating that Mickey refused to sign the first notes, which were.drawn “we, or either of us,” he states the reason assigned by Mickey for his refusal, as follows: “ Mickey said that would go to show that he had an interest in the purchase, which wa3 not true; he was willing to sign any note making him an indorser only.”
Now, without recurring to the evidence offered by the plaintiffs, we must say, that we can not read this testimony of the defendant Mickey himself, in the light of the undisputed circumstances of the case, without a clear and full conviction, that it was the intention, and understanding of all the,parties to this transaction, that Mickey, by his indorsement of the note, should become responsible to Mitchell, Harshbarger & Co., the payees, for any default in its payment by Leyman, at maturity. The note-was not accommodation paper; it was executed upon a valuable consideration, as between the immediate parties to it; it was intended as the evidence of an actual indebtedness by the maker to the payees; and there is no evidence that it was intended for discount. Indeed, the evidence offered by the plaintiffs proves the contrary. The payees of the note were not satisfied with Leyman’s responsibility, and required security. This was well known to Mickey, for he says that Leyman came to him, and asked him “to become his surety, to Mitchell, Harshbarger & Co. for the goods;” and he expressed his willingness to do so, by indorsing for him. True, he subsequently refused to sign the note, as a joint and several maker with Leyman, because, as he says, “-he had not agreed to sign the notes as principal; that he was no party to the sale;” or, as Leyman testifies, because “ that would go to show that he had an interest in the purchase, which was not true.” He did not object to becoming a surety to the payees, for Leyman, but, as he claims, said he would do so, by indorsing for . him. This language must have been used loosely. A witness for the plaintiffs *522 (Mr. Harshbarger), who participated in this transaction, testifies, that he “ did not know the difference between an indorsor and a guarantor, and has no recollection of any thing being said, to call his attention to the difference.” It is not probable that Mickey was much better informed on the subject. Eor the idea of his becoming a surety for the maker to the payees of the note, by a technical indorsement, is simply absurd. The only rational explanation of his language is to be found in the fact, that it was not used or understood by the parties in a strict or technical sense. . As the paper stood, at the time, his indorsement of it could operate as a security to the payees, only by giving him the position of a guarantor or surety. The most favorable view for Mickey, which can reasonably be taken of the whole transaction, under his own testimony, is, that while he refused to become primarily liable as a joint maker of the note, he did agree to become responsible to the payees, for a default of payment by the maker at maturity, provided payment should be demanded at maturity, and notice of the default be duly given to him.
This view of the evidence, would make Mickey’s contract one of conditional guaranty, and secure to him the rights of an indorser, in respect to demand and notice. And that the plaintiffs have complied with the conditions, which such a guaranty would impose upon them, by due protest for nonpayment, and notice to Mickey, is not controverted.
It is unnecessary to inquire whether the plaintiffs, as the Iona fide indorsees of this note, before maturity, and without notice, under the indorsement of B. H. Williams, who was the general assignee of the payees, can claim to hold it exempt from such defenses as might be set up in a suit between the original parties; for, we have found the defense unsustained by the evidence.
It is further claimed, on behalf of Mickey, that the writing of the guaranty, and waiver of demand and notice, over his signature, amounts to a fraudulent alteration of his contract, and discharges him from all liability. But this position can not be sustained. There was here no written contract to be *523 altered. Mickey’s name was indorsed in blank, and whether he thereby became bound as an indorser, a maker, or a guar antor of the note, must depend on the agreement of the parties, express or implied from the circumstances. Now, conceding that there was no authority to write over this blank signature a waiver of demand and notice, yet the proof shows that no fraud was in fact intended; there is no evidence tending to prove the contrary; and we think it clear, that a mistake made by writing over such a signature, a contract not authorized by the circumstances, will not discharge either party from the obligations of the actual contract. That such mistake may be at any time corrected, by canceling the unauthorized writing, and substituting therefor, such terms as will truly express the contract of the signer, or the unauthorized writing may be disregarded, and the actual contract enforced. To this point the authorities, cited by counsel for plaintiffs, are full and explicit. Josselyn v. Ames, 3 Mass. 274; Tenney v. Prince, 4 Pick. 385; Riley v. Gerrish, 9 Cush. 106; Sylvester v. Downer, 20 Verm. 355.
We are satisfied that the finding of the district court is clearly not warranted by the evidence in the case, and that the court therefore erred, in overruling the motion for a new trial.
Judgment of district court reversed, and cause remanded for new trial.
Brinkerhoee, C.J., and Day, White and Welch, JJ., concurred.